**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CECIL MATHEWS,**

      **Plaintiff,**

**VS.**                                   **Case No. 4:16cv375-RH/CAS**

**JULIE JONES and
SHANNON MILLIKEN,**

      **Defendants.**
_____/

## SECOND REPORT AND RECOMMENDATION

Plaintiff Cecil Mathews is a prisoner incarcerated by the Florida Department of Corrections.  He brought this § 1983 civil rights case, pro se, challenging departmental rules on First Amendment and due process grounds.  Plaintiff's second amended complaint [hereinafter "complaint"], ECF No. 15, alleged that his First and Fourteenth Amendment rights were violated by the Defendants' rejection of certain commercial publications. He claims that a Literature Review Committee (LRC) both rejects publications and then reviews appeals of that decision such that "no impartial decision maker is available."  *Id.* at 7.  Plaintiff also complains that

prisoners are not permitted to review the rejected material[1] which then

denies them an opportunity to file a proper appeal and violates due

process.  *Id.* at 8.  He claims that the denials "are either in direct violation of

D.O.C. policies or a clear exaggerated response to security."  *Id.*  As relief,

Plaintiff seeks a permanent injunction requiring "an impartial decision

maker" to review "magazine rejection appeals" and to require prison

officials "to provide the rejected material for review."  ECF No. 15 at 15.  He

also seeks nominal damages and a declaratory judgment.  *Id.*

Previously, Defendants' motion to dismiss, ECF No. 33, was granted

in part and denied in part.  ECF No. 45.  This case proceeds against the

Shannon Milliken, the Secretary's Representative, and Julie L. Jones, the

Secretary of the Department of Corrections, in her official capacity only.

ECF No. 15 at 2; ECF No. 45.  At the time the case was filed, Julie Jones

was Secretary of the Department.  Judicial notice is taken that Julie L.

Jones is no longer Secretary.  In early January 2019, Mark S. Inch was

appointed Secretary of the Department.  Secretary Inch should be

automatically substituted as Defendant pursuant to FED. R. CIV. P. 25(d),

---

[1] Despite that claim, Plaintiff has attached to his complaint, ECF No. 15, pages of several publications which were rejected.  *Id.* at 16-29.

and the Clerk of Court is directed to correct the docket to reflect this change.

The motion to dismiss narrowed some of the issues in this case.  For example, Plaintiff initially challenged the rejection of 14 publications and brought a 2-count, second amended complaint, ECF No. 15.  The motion to dismiss was granted as to Count II of the complaint which included Plaintiff's challenges to Rule 33-501.401(16)(B), which limited the amount of admissible reading material which could be stored in an inmate's personal living area, and Rule 33-501.401(16)(A), which allowed the rejection of "gift subscriptions."  *See* ECF No. 42 at 17-18 and ECF No. 45. As for Count I, the motion to dismiss was granted as to one of the challenged publications, High Voltage Tattoo (item 13 and exhibit O).  *See* ECF No. 42 at 17 and ECF No. 45.

After ruling on the motion to dismiss, ECF No. 45, Defendants filed an answer, ECF No. 46, and a Scheduling Order, ECF No. 48, was entered.  At the conclusion of an extended discovery period, *see* ECF No. 51, Plaintiff filed a motion for partial summary judgment, ECF No. 61, and Defendants filed a motion for summary judgment.  ECF No. 64.  The parties were provided opportunities to respond to the opposing party's

summary judgment motion, ECF No. 65, and responses were timely filed. Plaintiff's response, ECF No. 66, and Defendants' response, ECF No. 67, have been considered.

## I.    Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[2] the court "that there is an absence of evidence to support the

nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case.

Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

Cir. 2004) (citations omitted).  A party must show more than the existence

of a "metaphysical doubt" regarding the material facts, Matsushita Elec.

Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Hickson Corp.,

357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252,

106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences

must be resolved in the light most favorable to the nonmoving party,

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci, 557 U.S. at 586, 129 S. Ct. at 2677).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F. Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of proof) has a heavier burden on summary judgment, the Court will consider

the Defendants' motion first.  If Defendants' motion is denied, the Court will consider whether Plaintiff is entitled to judgment as a matter of law.

## II.   Relevant Rule 56 Evidence

Administrative Rule 33-501.401(3) governs "admissible reading material" and lists the reasons why a magazine may be "considered contraband" and rejected.  ECF No. 64 at 3.  Defendants point to Rule 33-501.401(8) which directs that "each institution's warden or designee" makes the "initial rejection" determination as to whether a publication should be impounded as inadmissible.  ECF No. 64 at 3.  The "LRC is the final appeal authority under the rule."  *Id.*; ECF No. 61 at 3 (citing to ECF No. 46 at 2, ¶ 8).

Defendants submitted the declaration of Jason Samuel Hoskins, the assistant bureau chief of security operations for the Department of Corrections.  ECF No. 64-1.  He explains that magazines such as *Popular Science* have been "banned" as a security threat because they "routinely describe in detail how to build, test, or play with substances, items, and chemicals that in a correctional environment would be dangerous."  *Id.* at 2. For example, Mr. Hoskins states that one article explained how "to produce dangerous volatile, explosive gasses" from "easily obtainable household"

items or "smuggled items." *Id.* Another article described how to use a usb stick to "infiltrate sensitive data networks or to copy files from the host system hard drive without any record of having logged into the host computer." *Id.* Mr. Hoskins declares that "instructional magazines and manuals that teach people to take easily obtainable items, substances, and chemicals then convert them into potentially dangerous things results in real injury to staff, visitors, volunteers, other inmates, and often themselves." *Id.* at 3. "Inmates can and do, take principles of science, twist and scale them into serious safety issues." *Id.* He noted how inmates have fashioned "cordless battery powered shavers into tattoo guns" which are very difficult to detect. *Id.* He explained how "stingers" are created from electrical cords which can "be used as a weapon against staff or inmates." *Id.* at 2-3. "These types of books and magazines only exacerbate an already dangerous environment." *Id.* at 3.

Defendants submitted a second declaration from Allen Dean Peterson, the Library Services Administrator, who evaluated the thirteen rejected magazines and explained what content made them "contraband."

ECF No. 64-2.[3]  Mr. Peterson explained that each of the magazines

contained articles which included information such as how to create

"improvised weapons" or improvised electronic devices, how to make an

improvised flame thrower, or discussing "various gases that can be used to

render someone unconscious."  *Id.* at 2-3.  Some provided instructions on

how to tie different knot which are "potential escape aids."  *Id.* at 3.  One

publication, Maxim, contained "depictions of sex" and Mr. Peterson advised

that one publication, the October 2015 edition of Esquire, contained a

"poster insert."  *Id.*  "If a part of a publication is considered inadmissible, the

entire publication is to be impounded or rejected, as outlined in FDC

Procedure 501.401(6)(b)."  *Id.* at 4.

---

[3]  The magazines cited and explained by Mr. Peterson were:
1) Mens Fitness, July/Aug. 2015 (ECF No. 15 at 8; Ex. B);
2) Popular Science, March/April 2016 (ECF No. 15 at 9; Ex. C);
3) Popular Science, Jan./Feb. 2016 (ECF No. 15 at 9; Ex. D);
4) Popular Science, May/June 2016 (ECF No. 15 at 9; Ex. E);
5) Popular Science, July/Aug. 2016 (ECF No. 15 at 9; Ex. F);
6) Popular Science, Nov. 2015 (ECF No. 15 at 10; Ex. G);
7) Popular Science, Sept. 2015 (ECF No. 15 at 10; Ex. H);
8) Popular Science, Dec. 2015 (ECF No. 15 at 11; Ex. I);
9) Maxim, April 2013 (ECF No. 15 at 11; Ex. J);
10) Outside, May 2014 (ECF No. 15 at 12; Ex. K);
11) Popular Science, Sept. 2013 (ECF No. 15 at 12; Ex. L);
12) Esquire, June/July 2014 (ECF No. 15 at 12; Ex. M);
and 13) Esquire, Oct. 2015 (ECF No. 15 at 13; Ex. Q).

Attached to Peterson's declaration were copies of the "Action Forms and Notice of Rejection or Impoundment of Publications Forms" for Plaintiff's rejected publications.  ECF No. 64-2 at 5-38.  Each notice had a checkmark in the box explaining that the magazine listed at the top of the page had been "impounded pending review by the Department's Literature Review Committee, because the Warden or designee believe[d] that the publication may contain subject matter that is inadmissible per Section (3) of Rule 33-501.401, F.A.C."  *Id.* at 6, 8, 11, 13, 16, 18, 21, 24, 26, 29, 32, 35, and 38.  The notices cited to Rule 33-501.401(3)'s criteria which advised why the publications were inadmissible.  *Id.*  Notably, each notice is dated and directed to a specific inmate whose institution is listed, and none of the notices submitted in this case were directed to Plaintiff.

Included with the Notices of Rejection were copies of the Literature Review Committee Action Forms.  *See* ECF No. 64-2 at 5, 7, 10, 12, 15, 17, 20, 23, 25, 28, 31, 34, and 37.  These forms have a place under "Committee Review" for three different prison officials (security operations, grievance appeals, and library services) to either recommend affirming or overturning the impoundment action initiated from an institution.  Below that section of the form is a place to designate the Committee decision, either to

affirm or overturn the impoundment decision.  The LRC chairman then

signs and dates the form.  *Id.*

As additional evidence, the Court has taken note of Plaintiff's second

amended complaint which included copies of eight publications ordered by

Plaintiff which were rejected as inadmissible reading material.  ECF No. 15

at 16-29.  It appears that when the publications were rejected, Plaintiff was

provided a Notice of Rejection or Impoundment of Publications which

explained the reason a specific publication was deemed inadmissible.  ECF

No. 15 at 32-54.  The notices Plaintiff received advised that the magazine

or publication listed at the top of the page had been "rejected" and could

not be received by inmates.  The notices state that the "Department's

Literature Review Committee [had] reviewed the publication and

determined that it contain[ed] subject matter that [was] inadmissible per

Section (3) of Rule 33-501.401, F.A.C., Admissible Reading Material."

*See, e.g.,* ECF No. 15 at 32.

The notices also advised inmates that the rejected publication would

be held at the institution for 30 days so arrangements could be made "to

have the publication picked up by an approved visitor or mailed to a

relative, friend, or the sender at the inmate's expense . . . ."  *See, e.g.,* ECF

No. 15 at 33.  Further, the notices inform the "senders" of the publications that when a publication is rejected at one institution, "the impoundment or rejection shall be immediately applied in all major institutions, work camps, road prisons, and forestry camps of the Florida Department of Corrections." *Id.*  Senders are advised of their opportunity to appeal such a decision.  *Id.*

Plaintiff filed grievance appeals concerning the rejection of the publications.  *See*, e.g., ECF No. 15 at 34, 38, 43, and 48.  Those appeals were denied and signed by Defendant Milliken as the Secretary's Representative.  *Id.*

## III. Analysis

### A. Defendants' motion, ECF No. 64

Defendants argue that under Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987), the regulations which authorized the rejection of Plaintiff's publications were reasonable and, therefore, Plaintiff's First Amendment rights have not been violated.  ECF No. 64 at 7-15.  In response, Plaintiff states that he is not challenging the constitutionality of the rules and is not attacking "the policies on their decision making."  ECF No. 66 at 2.  Rather, Plaintiff states that his "entire issue is their failure to comply with already established policies."  *Id.* at 2-3.

Case No. 4:16cv375-RH/CAS

He argues that publications are wrongfully rejected as containing

instructions in how to build possible weapons such as a "Jacob's Ladder,"

but Plaintiff contends that Defendants ignore the fact that such materials

are not available to inmates.  *Id.* at 3.  Plaintiff argues that Defendants do

not "explain how an inmate can obtain the items needed to create any of

the items in any of the magazines at issue and those facts are still clearly in

dispute and warrant a trial." *Id.* at 2.[4]   He also questions why a "poster

can't be removed from a magazine when product samples can be

removed" and the magazine otherwise provided to inmates.  *Id.* at 5.

Defendants responded to Plaintiff's argument by pointing out that the

failure to follow rules, policies, procedures, or state law "alone does not

state a constitutional claim."  ECF No. 67 at 4 (citing Jordan v. Colon, No.

2:09-CV-177-FTM-36, 2012 WL 394472, at *4 (M.D. Fla. Feb. 7, 2012)).

Taking the last argument first, it is true that a constitutional violation

may not be predicated upon a prison official's failure to adhere to rules,

policies, or procedures established by the Department of Corrections.

Jordan, 2012 WL 394472, at *4 (citing to Harris v. Birmingham Bd. Of

---

[4] Attached to Plaintiff's response is a list of the materials Plaintiff says are needed to build the various "possible weapons" such as "Jacob's Ladder," and which he suggests are not obtainable in a correctional institution.  ECF No. 66 at 7-10.

<u>Educ.</u>, 817 F.2d 1525, 1527 (11th Cir.1987) (noting that violation of a state statute does not equate to a constitutional violation); <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir.1993) (recognizing that "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.")).  Construed liberally, Plaintiff's complaint argued that officials' decisions rejecting publications are "either in direct violation of D.O.C. policies or a clear exaggerated response to security."  ECF No. 15 at 8.  Plaintiff is not, however, asserting that his rights were violated because a prison official did not comply with a rule.  Instead, Plaintiff is arguing that in making such exaggerated decisions, his First Amendment rights are violated.  As such, Plaintiff is essentially challenging Rule 33-501.401 "as applied" by prison officials, and as approved by Defendant Milliken.

The First Amendment, made applicable to the States through the Fourteenth Amendment, protects rights such as freedom of speech. <u>Procunier v. Martinez</u>, 416 U.S. 396, 406, 94 S. Ct. 1800, 1808, 40 L. Ed. 2d 224 (1974), *overruled by* <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).  Inmates retain those First Amendment rights not incompatible with prison life.  <u>Pell v. Procunier</u>, 417 U.S. 817,

822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974); Bell v. Wolfish, 441

U.S. 520, 545, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979).  Some rights

must necessarily be limited by incarceration, Price v. Johnston, 334 U.S.

266, 285, 68 S. Ct. 1049, 1060, 92 L. Ed. 1356 (1948), but inmates "clearly

retain protections afforded by the First Amendment."  Pell, 417 U.S. at 822,

94 S. Ct. at 2804.  The rejection of mail deemed unacceptable and

contraband is a type of censorship that "would raise grave First

Amendment concerns outside the prison context."  Thornburgh, 490 U.S. at

407, 109 S. Ct. at 1878.  In the prison setting, however, rules which

impound or reject magazines must be evaluated "with due regard for the

'inordinately difficult undertaking' that is modern prison administration."

490 U.S. at 407, 109 S. Ct. at 1878 (quoting Turner v. Safley, 482 U.S. at

85, 107 S. Ct. at 2259).  Courts must be "sensitive to the delicate balance

that prison administrators must strike between the order and security of the

internal prison environment and the legitimate demands of those on the

'outside' who seek to enter that environment, in person or through the

written word."  490 U.S. at 407, 109 S. Ct. at 1878.  Courts "owe 'wide-

ranging' and 'substantial' deference to the decisions of prison

administrators because of the 'complexity of prison management, the fact

that responsibility therefor is necessarily vested in prison officials, and the fact that courts are ill-equipped to deal with such problems.'" Al-Amin v. Smith, 511 F.3d 1317, 1328 (11th Cir. 2008) (quoted in Prison Legal News v. Sec'y, Fla. Dep't of Corr., 890 F.3d 954, 965 (11th Cir. 2018), *cert. denied sub nom.* Prison Legal News v. Jones, 139 S. Ct. 795, 202 L. Ed. 2d 571 (2019) (other citations omitted).

In Thornburgh v. Abbott, the Court determined the "standard of review" should apply to prison regulations which infringe upon First Amendment rights.  490 U.S. at 408, 109 S. Ct. at 1879.  The Court noted that it was not appropriate to apply a "least restrictive means" test as could be read from the Martinez decision as that did not "afford prison officials sufficient discretion to protect prison security."  *Id.* at 413, 109 S. Ct. at 1881.  The Court held "that regulations affecting the sending of a 'publication' . . . to a prisoner must be analyzed under the Turner reasonableness standard."  *Id.*

Although Plaintiff stated that he was not challenging the constitutionality of Rule 33-501.401, it must still be considered under the Turner standard.  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

legitimate penological interests." Turner v. Safley, 482 U.S. at 89, 107 S. Ct. at 2261 (quoted in Loor v. Bailey, 708 F. App'x 992, 993 (11th Cir. 2017), *cert. denied*, 139 S. Ct. 225 (2018)).  Turner requires consideration of four factors "to determine the reasonableness of a regulation: (1) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right remains open to inmates; (3) the impact the accommodation of the asserted right will have on resources and other inmates and (4) whether a ready alternative exists that fully accommodates prisoners' rights at de minimis cost to valid penological interests." Loor, 708 F. App'x at 993-94.

Here, the first factor is easily met.  Prison officials have a strong and legitimate interest in the security of Florida's correctional institutions. Preventing inmates from receiving instructions on fashioning items into weapons or tools of escape is a necessary interest and is rationally related to rejecting mail which provides such instruction.  Second, inmates have alternative means because they may receive other personal communications and a wide array of commercial publications which do not meet the criteria of "inadmissible" as listed in Rule 33-501.401(3).  *See*

Parker v. Overstreet, No. 8:02-CV-1929-T-23MAP, 2005 WL 2467210, at

*4 (M.D. Fla. Oct. 6, 2005) (finding inmates may receive a "wide array of

materials" and are "precluded from receiving only those publications that

meet the narrowly defined meaning of inadmissible materials").  The third

factor is also met because accommodating Plaintiff's interest in receiving

the mail would create a security issue.  Correctional officers would face an

even more difficult task in locating weapons, preventing assaults, and

maintaining a secure facility if inmates could receive instruction in ways to

improvise weapons and alter common items for an illicit purpose.

As for the fourth factor, Plaintiff has come forward with no suggestion

of "obvious, easy alternatives" which suggest prison officials' actions are

"an exaggerated response" to the issue.  Rather, Plaintiff argues that items

discussed in the rejected publications are not available inside the walls of

Florida's prisons and, thus, any decision to reject an article when items

mentioned therein are not within the institution is an "exaggerated

response."  ECF No. 66 at 2-5.  Plaintiff's argument is not persuasive.

The Department is not prohibited from being proactive and seeking to

"limit sources of temptation and the means that inmates can use to commit

crimes."  Prison Legal News, 890 F.3d at 957.  The Department has a

legitimate penological interest in preventing inmates from receiving publications which provide information that can be utilized in fashioning weapons or in planning an escape.  Prison officials have good reason to not doubt the creativity that may be employed by prisoners in fashioning items as weapons or in otherwise altering products found within a prison. Just because an item is not currently accessible does not mean it could not be brought into an institution at some point, either hidden as contraband or in the light of day.  It is not hard to envision the allowance of a "seemingly innocuous" item into a prison compound that could soon be manipulated into a weapon by one who is intent on causing harm to another.  *See* Thornburgh, 490 U.S. at 407, 109 S. Ct. at 1878 (noting that experienced prison officials may discern "significant implications for the order and security of the prison" that are missed by others).  Furthermore, although Plaintiff has argued that many of the items listed in the rejected magazines are not found on prison grounds, it does not prevent the introduction of such items as contraband.  Such attempts occur with frequency in Florida's prisons.

Magazines which provide detailed instructions on how to create weapons also have the related ability of encouraging efforts to recreate

similar weapons with more readily available materials.  The Department

may "be proactive in addressing security problems" and may permissibly

reject such magazines without violating the First and Fourteenth

Amendments.  Prison Legal News, 890 F.3d at 957, 960.  Plaintiff's First

Amendment rights are not unconstitutionally infringed by the rejection of

the magazines at issue in this case.  Defendants' motion for summary

judgment should be granted as to this First Amendment claim.

## B.    Plaintiff's partial motion, ECF No. 61

Plaintiff moved for partial summary judgment only as to his due

process claim that he is "denied an impartial decision maker for

magazines" that are rejected.  ECF No. 61 at 2.  He contends it is

undisputed that the LRC reviews all grievances and inmate appeals, and

the decision of the LRC is final.  Id. at 2-3.  Plaintiff argues that Thornburgh

v. Abbott requires prison officials to "provide a prisoner a right to an appeal

to someone other than the person who made the decision to exclude the

publication."  Id. at 3.  He further argues that it is undisputed that inmates

are not permitted to "view the material so [they] can file a proper appeal."

Id. at 5.  Without viewing the material, Plaintiff contends he cannot "mount

an effective challenge to the decision to withhold that publication." *Id.*
(citing Montcalm Pub. Corp. v. Beck, 80 F.3d 105, 109 (4th Cir. 1996)).

Defendants have responded to Plaintiff's motion in the same way
they addressed this argument in their own summary judgment, by
maintaining that Plaintiff does not have a due process right in the grievance
system.  ECF No. 67 at 2-4; ECF No. 64 at 15-17.  They argue that
Thornburgh does not stand "for the premise that there must be an ability to
appeal to an entity other than the one that made the decision to exclude
the publication."  *Id.* at 3.  Defendants contend that Thornburgh "simply
adopted the Turner factors in determining the reasonableness standard in
censoring publications sent to prisoners."  *Id.*

Defendants' argument that "Plaintiff does not have a due process
right in the grievance process" misses the mark.  Preventing
communication between publishers and inmates infringes upon a protected
liberty interest.  "The Supreme Court has advised that '[i]n a Constitution
for a free people, there can be no doubt that the meaning of 'liberty' must
be broad."  Bd. of Regents v. Roth, 408 U.S. 564, 572, 92 S.Ct. 2701,
2707, 33 L.Ed.2d 548 (1972) (quoted in Perry v. Sec'y, Fla. Dep't of Corr.,
664 F.3d 1359, 1367 (11th Cir. 2011)).  Freedom of speech and freedom of

the press are included within the concept of liberty.  It has long been

established that withholding a prisoner's mail is an assault to that liberty

interest and "must be accompanied by minimum procedural safeguards."

Procunier v. Martinez, 416 U.S. 396, 417-18, 94 S. Ct. 1800, 1814, 40 L.

Ed. 2d 224 (1974).  Although Procunier was overruled by Thornburgh as to

the standard to be employed in evaluating a First Amendment prisoner

case, it did not address the procedural safeguards that should accompany

such a decision.  Perry, 664 F.3d at 1368 (stating that "Thornburgh did not

discuss the standard for procedural due process, except to thoroughly lay

out the safeguards created by the particular regulations in question and

declare that the regulations properly 'provide[d] procedural safeguards for

both the recipient and the sender.'").

The three safeguards determined by the Court to provide sufficient

protection when materials are rejected are: (1) inmates must receive notice

of the rejection; (2) the author must be given notice an "reasonable

opportunity to protest" the decision, and (3) complaints should "be referred

to a prison official other than the person who originally disapproved the

correspondence."  Martinez, 416 U.S. at 418-19, 94 S. Ct. at 1814 (quoted

in Perry, 664 F.3d at 1368).  The Eleventh Circuit reaffirmed that

"procedural safeguards must exist to ensure that" those whose materials are blocked from receipt have an opportunity to appeal the decision.  664 F.3d at 1368.  Thus, the denial of a prisoner's First Amendment right to receive a publication must be accompanied by due process.

Although Plaintiff has argued that his due process rights were violated because the LRC is the "final authority" and reviews inmate grievance appeals, *see* ECF No. 61 at 2-3, Plaintiff has not shown a genuine dispute of material fact concerning his due process claim.  The evidence reveals that publications are rejected *first* at an institution by a warden or designee.  That is in compliance with Rule 33-501.401(8)(a) which provides:

> The warden or designee shall impound and not issue to inmates any publication that he finds to be inadmissible pursuant to the criteria in subsection (3) within 15 calendar days of receipt of the publication at the institution. If only a portion of a publication meets one of the criteria for rejection established in subsection (3), the entire publication shall be impounded. For the purposes of approving the impoundment of publications, the warden's "designee" shall be limited to the assistant warden.

FLA. ADMIN. CODE R. 33-501.401(8)(a).  Defendants' evidence shows that inmates at various institutions had also ordered the same publications as

Plaintiff and upon receipt at those institutions, the publications were impounded for further review.

The rule directs that the warden or designee provides an inmate with the Notice of rejection or Impoundment and copies are provided "to the publisher, mail order distributor, bookstore or sender, and to the literature review committee." FLA. ADMIN. CODE R. 33-501.401(8)(b); *see also* FLA. ADMIN. CODE R. 33-501.401(10)(b). That also occurred as shown by the notices submitted in this case.

Thereafter, the LRC must review the action taken at the institution. In doing so, the LRC functions as an independent reviewer and the ultimate decision of whether a publication is approved is made by a "prison official other than the person who originally disapproved the correspondence" at a particular institution. The fact that some prisoners are notified of a publication's rejection by the LRC does not mean that it was not subjected to an independent review process. In this case, Plaintiff received due process when the publications were reviewed first by a prison official at a correctional institution and then by the LRC, a committee of at least three persons representing the Department's interests in security operations, grievance appeals, and library services.

Having reviewed this case under the lens of Thornburgh v. Abbott and Turner v. Safley, it appears that Plaintiff's First Amendment rights were implicated by the rejection of his magazines, but that rejection does not offend the Constitution.  The rejection process provides procedural due process to safeguard the rights of publishers and inmates.

**Recommendation**

It is respectfully **RECOMMENDED** that Plaintiff's motion for partial summary judgment, ECF No. 61, be **DENIED**, that Defendants' motion for summary judgment, ECF No. 64, be **GRANTED** and judgment entered in Defendants' favor.

**IN CHAMBERS** at Tallahassee, Florida, on July 3, 2019.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



**<u>NOTICE TO THE PARTIES</u>**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R.**

Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.